In their motion for rehearing, the appellees/lessees raise several issues considered in our original opinion and some not directly addressed in that opinion although argued in their brief.
Concerning discriminatory rent increases, the lessees now argue for the first time that they cannot be held to the requirement of pursuing internal remedies because they are not members of FSTC, and, therefore, that they properly stated a cause of action by alleging that FSTC had discriminated against them in violation of their lease agreements, without stating that they had pursued internal remedies or that to do so would be futile. We agree.
As noted above, this Court has equated members of FSTC with stockholders of a commercial corporation. Unlike members, the non-member lessees have no equity ownership or property rights in FSTC. As against FSTC, their rights are purely contractual, and it follows that the non-member lessees are under no duty to make an internal demand on FSTC before filing suit to enforce contract rights under their lease agreements.[1]
The next question is what effect this conclusion will or should have on the trial court's order requiring FSTC to implement a new rent assessment system. As an initial matter, the specific contractual rights of the non-member lessees regarding annual rents should be enumerated and considered. These rights are derived from the standard "Application for Land," the lease agreement, and the FSTC constitution and can be summarized as follows:
The annual rent is to be the "annual rental value," exclusive of the lessee's improvements, as determined by the executive council "under the avowed principles of so fixing the rentals of its lands as to equalize the varying advantage of location and natural qualities of different tracts." The term "rental value," as applied to realty, means the value of the use of the land. White Roofing Co. v. Wheeler, 39 Ala. App. 662, 666,106 So.2d 658, 662 (1957), cert. denied, 268 Ala. 695,106 So.2d 665 (Ala. 1958). Also, with the exception of the right to participate in the governance of FSTC, the non-member lessees have the right to be treated with strict equality with members in "the distribution of benefits." Based on the essential purpose of FSTC with respect to land, we construe this right to include the right to be treated equally with members in the determination of annual rents.
In summary, although there is no contractual "fairness" limitation in the determination of the lessees' annual rents,[2] FSTC is obviously bound by three contract terms: the annual rent 1) must approximate the annual value of the use of the *Page 1239 
land, exclusive of the lessee's improvements, 2) it must be based on the goal of equalizing rents on different tracts of land, and 3) it should be the same as that charged members on similar tracts of land.
In ordering FSTC to implement a new rent assessment system, the trial court proceeded under the theory that FSTC is a charitable corporation and that all lessees, non-members as well as members, are beneficiaries. The relief was ordered based on the finding of discrimination against non-member lessees in the determination of annual rents. Although this finding of fact is not contested, we find two reasons for concluding that the trial court abused its discretion in ordering the aforementioned relief.
First, FSTC is more in the nature of a commercial corporation than in the nature of a trustee of a charitable corporation. Second, as against FSTC, the rights of the non-member lessees are purely contractual. Hence, the non-member lessees' only available remedies are either money damages or specific performance. In their original brief, appellees argued that "[T]he trial court's action in regard to the rental policy of FSTC is justifiable under the . . . alternative grounds of specific performance of a contractual right." Appellees further argue, because their contractual rights relate to real property and specific performance of a land contract is available within the discretion of the trial court, that the "allowance of [the] requested modification in FSTC [rent] policy was appropriate." We disagree.
Any right the non-member lessees may have to specific enforcement of their contract rights with regard to the determination of annual rentals would not go so far as ordering FSTC to make changes in its internal management. The trial court erred in ordering FSTC to appoint a "Rent Study Commission" and to implement a new rent assessment system. Moreover, with regard to alleged past discrimination, the only proper remedy would be money damages. As to the proper remedy to insure that FSTC will comply with its contractual obligation to assess lessees a fair annual rent, as previously outlined, the trial court can do no more than enforce the contract as written.
The trial court also ruled that "[T]he policy of FSTC whereby it restricts the sale of improvements by its lessees to a purchase price approved by FSTC is hereby declared void." Appellees argue that the order prohibiting such a restriction was justified and required by the FSTC Constitution and that they are unsure whether our original opinion reversed this aspect of the trial court's order.
Article 8, § 3, of the FSTC constitution provides that "[L]and leases shall convey full and absolute right . . . to the ownership and disposition of all improvements made . . . thereon." The "Standard Lease Application" provides:
 "I agree that . . . [I will not] charge an excessive price out of any fair relation to the value of my improvements for transfer of an improved leasehold; and, recognizing that in the transfer of an improved leasehold there are necessarily two factors of value, one the improvements which are my property and the other the land upon which the same stand, which is not my property but the property of the Corporation, I agree to advise the Corporation, before a transfer of an improved leasehold shall be effective, of the exact consideration for the transaction and that the Corporation, if it believes the consideration to include in fact a profit for the transfer of the land which belongs to it, shall be entitled to examine me and the prospective purchaser as to the elements of value in the consideration and if satisfied that the consideration is in part for the possession of the land above the value of the improvements may refuse approval of the transfer; in which event I shall be entitled to call for an appraisal of the value of my improvements by three disinterested persons, myself and the Corporation each choosing one out of three persons named by the other and the third being selected by the two; and the Corporation shall be required to approve the transfer at such consideration as the arbitrators *Page 1240 
shall find to be the real value of my property, if accepted by me; it being understood and agreed that every factor of value attaching to the premises proposed to be transferred due to my efforts or expenditures, or in any way to my initiative which is transferable . . . shall be held to inure to me as fully as tangible structures upon the land; the purpose being to protect the user and improver of land in the full ownership and right of transference of everything due to him, but to preserve to the Corporation all value due to demand for the land exclusive of improvements."
It is obvious from the foregoing provisions that FSTC has no right to dictate the price at which lessees are to sell the improvements on their leaseholds. FSTC's only interest and right is to see that the price received by a lessee on the transfer of his leasehold does not include consideration for the transfer of the land itself. In this regard, if FSTC believes that a lessee is in fact receiving consideration for the transfer of the land, it is obliged to proceed as the lease application provides. The trial court was, therefore, correct in ordering FSTC to cease its policy of requiring lessees to first get approval of the sale price of their improvements before transferring their leaseholds.
Under FSTC policy, clearing land is not considered an improvement for the purposes of subleasing it. In its conclusions of law, the trial court held that this policy, which prohibits a lessee from subletting such cleared land for any rental in excess of what FSTC charges the lessee, "is another violation of the lessee's right to the security of his improvements." The trial court ordered that "[T]he clearing of unimproved land by a lessee shall be considered an improvement by the lessee for all purposes."
The "Standard Lease Application" provides:
 "[E]very factor of value attaching to the premises
proposed to be transferred due to my efforts or expenditures, or in any way to my initiative which is transferable, such as the good will of a going business, the exercise of taste in planning improvements or the making of grounds attractive, or the element of time and care in growing an orchard or shade trees, or making land more productive by improved methods of farming, or increment of value due to increasing cost of building, shall be held to inure to me as fully as tangible structures upon the land; the purpose being to protect the user and improver of land in the full ownership and right of transference of everything due to him, but to preserve to the Corporation all value due to demand for the land exclusive of improvements." (Emphasis added.)
We hold that the trial court was correct in construing the foregoing provision to include the clearing of unimproved land.
In its conclusions of law, the trial court held that the monies derived from the sale or lease of mineral rights by FSTC are properly considered trust funds to be used for the benefit of all lessees. Appellees argue that this ruling is authorized in light of the FSTC constitution and lease agreements. We agree.
Article Eight, § 2, of the FSTC constitution provides that FSTC will "convert into the treasury of the Corporation for the common benefit of its members, all values attaching to such lands, not arising from the efforts and expenditures of the lessees." (Emphasis added.) The first clause of the agreements contained in the standard lease also provides that "all values attaching to such lands" (emphasis added) will be held for the common benefit of FSTC's lessees.
Bearing in mind the principle that a contract is construed most strongly against the party who drafted it, Rivers v.Oakwood College, 442 So.2d 74 (Ala. 1983), we hold that the trial court did not err in holding that monies derived from the sale or lease of mineral rights are trust funds to be used for the benefit of all lessees.
In its conclusions of law, the trial court also held that the adoption of the "Revised Standard Lease" was a breach of the contract FSTC had with each lessee *Page 1241 
under the standard lease to maintain a trust for the rent money received from all lessees for the equal benefit of all lessees. Although we did not directly address this question in our original opinion, we now hold, based on the express provisions of the standard lease, that the trial court did not err in concluding that FSTC had breached its contract with the lessees who hold lands under the standard lease. The standard lease states that FSTC will "convert into the treasury of the Corporation for the common benefit of its lessees all values attaching to such lands" and that "no parts of the rents paid by [the lessee]. . . shall be appropriated as dividends to its members or any other persons, but that all shall be administered as a trust fund for the equal benefit of those leasing its lands." (Emphasis added.) We construe these provisions to grant the lessees under the standard lease the right to have all rents paid by all lessees administered as a trust fund for the benefit of all lessees.
APPLICATION FOR REHEARING OVERRULED; OPINION EXTENDED.
MADDOX, JONES, BEATTY, and STEAGALL, JJ., concur.
ALMON, J., not sitting.
[1] On original deliverance, we stated that we were applying the internal demand requirement as set forth in Rezner v. FairhopeSingle Tax Corp., 292 Ala. 456, 296 So.2d 166 (1974). A careful reading of Rezner reveals that this requirement was apparently applied to non-member lessees. We have gone to the record inRezner and have determined that, in fact, the complainants who were deemed subject to the rule were both member and non-member lessees. Our decision on rehearing in this case overrulesRezner to the extent that the internal-demand requirement was made applicable to non-member lessees.
[2] The trial court found that the annual rental for land is the "fair rental value." This term is found in FSTC's "Declaration of Incorporation," which is not a part of the non-member lessees' lease contracts with FSTC.